The next case up this morning is 4110380 in re Estate of Reynolds. For the appellant show Salim Mandani, is that pronounced correctly, sir? That is correct. And George Lewis? Yes, sir. Okay. Are you both going to argue? No. Okay. And for the appellee is Thomas Leeper. Are you ready, sir? And Brett Gorman? Yes, sir. Who will be arguing? I believe I will be starting in the last 15 minutes. Okay. Have you informed the clerk? Yes, I have. Good. Okay. Well, then we will let you argue accordingly. Okay. Mr. Mandani, you may proceed, sir. Thank you. May it please the court. Counsel. We are here today because when Muriel Reynolds passed away on January 2nd, 2009, she included in her will a residuary bequest to an entity known as First Presbyterian Church, Quincy, Illinois. At the time of her death, no entity by that name existed. The estate then sought to distribute the residuary bequest to an entity known as Faith Presbyterian Church. Our clients, Charles Kemp, Michael Downing, and Patricia Downing, the next of kin of Ms. Reynolds, filed an objection, and the resolution of those objections is what has brought us here. I would like to emphasize that the standard of review of this court should be applied. Keep your voice up just a little bit, please. Sure. The hearing that was held below was a hearing on a document that Faith Presbyterian titled a motion to dismiss. During the hearing, Faith was asked if it had any further evidence to present, and it said no, not at this time. In addition, the way the court conducted the hearing, by having Faith proceed first and having the last say, all combined to indicate that the court was at least initially treating the matter as being heard on a motion to dismiss. As such, as elaborated more fully in the brief, I think the type of motion to dismiss is a section 2619 motion, which, as the court is well aware, should be reviewed to know to determine if... This isn't really a motion to dismiss. This is an objection, and they're saying your objection is not well taken. Let's have a hearing. Well... Isn't that what happened? That's essentially how the trial court ended up ruling on it. Well, they called it a motion to dismiss, but they were wrong. This is just essentially an answer saying, nah, it's not true. Let's have a hearing. Well, even if that's the case, Your Honor, and I wouldn't necessarily concede the point, even if that's the case, when you're construing a will and determining whether there's an ambiguity or not, the court should still be applying to know of a review. How about when the trial court conducts a hearing and takes evidence and makes findings? Well, in this case, the court... Didn't the judge do that here? The court took documentary evidence only, and I believe... There were no witnesses who testified? No, Your Honor, not to my knowledge. And the case I cited in my brief, Rashmi Meyer, provides, and I didn't emphasize the point in the brief, but in the opinion... When an appellate court is confronted with a trial court that only took documentary evidence, the appellate court is free to make its own factual findings based on those documents. Moving on, this determination of whether or not there was an ambiguity turns on whether or not the court deems the Presbyterian's actions as affecting a dissolution of First Presbyterian Church. Well, Judge Bailey favored the parties in this court with a detailed finding, including this language. Faith Presbyterian Church is the same denomination, the same corporation, the same congregation with the same pastor and the same building at the same location as it was and was named First Presbyterian Church and affiliated with Great Rivers Presbytery. The only difference now are the name change, elimination, or affiliation with the Presbyterian faith or affiliation with the Evangelical Presbyterian Church. And he concluded based thereon that there is difference at best only in form, not in substance. What's wrong about the conclusion he reached? Well, I think based on the evidence in front of the judge, I don't know that there was taken of the composition of the congregation before and after the switch from denomination. Based upon the documents and everything else submitted, what's wrong? Based upon the documents. What part of these conclusions is not correct? The conclusion that faith, sorry, beg your pardon, that the Evangelical Presbyterian Church and the Presbyterian Church USA denominations are the same denomination. Do they have the same pastor? They do have the same pastor. Are they in the same building? Are they at the same location? They are in the same location. Do they have the same congregation members? That's not in the record. You mean we don't know any of it? No, Your Honor. He made it up? No, I think he probably, when the church decided to change affiliations, I think the trial court probably assumed that that action was taken with at least a majority, probably a That's not the question I asked or what he said. Are the same members, the same congregants in the church now as before? And to that I would respond, I don't know on what basis the trial court could have held that because the information simply wasn't in the record. I would further note that the actions of the departing members, if I'll be allowed to call them that, show that they thought that there was a significant distinction between the Presbyterian Church USA denomination and the Evangelical Presbyterian Church denomination. It was such a significant difference that they were willing to put their church property, the building, their accounts, et cetera, on the line in litigation in order to effect the change. So it seems to me that in light of their willingness to risk so much, it's difficult to conceive of how these two denominations are the same as the trial court held. What about the fact that there was an agreement between the two branches as to how gifts and devices would be distributed? I think the agreement, given that the dissolution is entitled to deference, in light of that dissolution, that agreement can be construed as just binding those two parties. As between themselves, faith will not contest a bequest given to an entity named First Presbyterian Church after a certain date. Great Rivers Presbytery would not contest a bequest given to First Presbyterian Church prior to a certain date. But that agreement was between those two parties as to whether or not they would contest the bequest between themselves. I don't think that agreement can bind a third party that was not a party to the contract. But doesn't it in some way reflect the ongoing nature of that Presbyterian Church at that location? If that's the interpretation, if the court were to conceive of the agreements subsequent to the determination of dissolution as acknowledging that in fact no dissolution occurred, that sort of interpretation kind of destroys any notion of deference that should be given to the decision to dissolve. The presbytery had the choice to dismiss or dissolve the church. If it was decided by faith, they asked the presbytery to dismiss and not to dissolve the church. If we were to interpret the subsequent decisions as meaning that the church wasn't actually dissolved, I don't see how we're granting any deference to the presbytery's decision instead of dismissal in favor of dissolution. On that same note, I discussed that the decision to dissolve is entitled a deference. The Lowell, Jones, and York cases set forth the framework for deciding these religious property disputes. When a hierarchical church body makes a decision with regard to internal church policy, doctrine, or practice, those cases hold that the courts must defer to that hierarchical church body. In contrast, where a decision doesn't involve internal church doctrine, policy, practice, those decisions are subject to review by the courts with a more, I guess, deeper analysis. The U.S. Supreme Court suggested that a neutral principles analysis is appropriate in those cases, and we don't dispute that in those cases a neutral principles analysis is appropriate. However, this court itself, in play, affirmed that both a policy of deference in certain cases and a neutral principles analysis in other cases is appropriate. Isn't the question what Ms. Reynolds wanted to do? Isn't that the issue here? How are we going to get involved in church doctrine? Because if the church was dissolved and did not exist as of the date of her death, the court then has to move on to determine what Ms. Reynolds' intent was. Faith's position has always been, and it appears the trial court's holding was, First Presbyterian Church was never dissolved. It merely changed its name. And our position to the contrary is that no, it in fact did get dissolved, and therefore we then do have to inquire as to what Ms. Reynolds' intent was. And as to that issue, there is very little, if anything, in the record about the only thing that we have as far as her intent is that she gave a bequest to First Presbyterian Church. We don't know if she attended that church prior to her disability. We don't know if she asked the attorney drafting the will to give her an idea of what's a good church to give money to. We don't know if she liked the building and wanted to help the building. Well, we do know something further. She didn't give $500,000 to Kemp Downing and Downing. That's true, Your Honor. She knew about them, didn't she? I don't think there's anything in the record that suggests that she did or did not. Well, let's see. I would presume that she's... Okay, is that a reasonable inference? That is a reasonable inference. So even if she didn't attend the church, she thought, you know, let's give half a million dollars to this church as opposed to these shirt-tail relatives. I would concede that, Your Honor. And now you're saying, oh, but, you know, they changed this overall structure, and now she... That would change everything. Give a half million dollars to the shirt-tail relatives now, right? Well, this is exactly where... Is that your position? I don't know if I would put it that way, Your Honor. Tell me how you would put it. I think the way I would put it is that because this matter was before the trial court on a motion to dismiss... Well, we discussed earlier that it's not the motion... We're talking about a hearing on a motion. Okay. As simply objecting and its objection is no good. Well... Notwithstanding what they called it. So go ahead. What's your position? I think my position would be, Your Honor, that even though we know that she didn't choose to leave anything to the relatives, we also know that she tried to leave something to a church that doesn't exist anymore, and I don't know that there's any basis in the record to say... And if only she had known that there was going to be this... There was going to not be faith presbytery in church, everything would have been different. We don't know. Well, but that's your argument, isn't it? Isn't it? And that the trial court's ruling to the contrary should be overruled. It's that her intent is unknown. Well, because that's the effect, isn't it? I mean, if we agree with you, these people who, let's be generous, were not the object of her beneficence, as she wrote her will, would suddenly become the object. Isn't that right? That's correct. Okay. And we have to conclude that, by God, if only she had known the church was going to change this structure, that's what she would want it to do. I think that there's not very many ways to look at it other than that, Your Honor. But... What evidence is there in this record that would support such a conclusion? Well, outside of the fact that she... Well, I suppose she was not able to make any changes once she became disabled. So it's unclear whether she would have changed her mind. Well, let's assume at the time she was entirely mentally competent and she made this initial decision to, one, give the money to the church, and two, give zip to your clients. What is there that would suggest, gee, you know, if only she had known that this was going to be this dispute among the congregation, it would have changed everything? I think if she had been competent, I think this Court would be compelled to believe that she intended to leave the residue to others other than the next of kin. However, because we don't know that, because she wasn't competent at that time, I'm not sure that it's appropriate to wholly discount the possibility that she would have changed her will. We simply don't know. Does the record contain any indication of the relationship, if any, that these petitioners had with Ms. Reynolds during her lifetime? No, Your Honor, it doesn't. What is their relationship through the non-testamentary distribution? Simply the blood relationship. What is it? Second cousins once removed? I believe they're second cousins. How fortunate for them. Anything further, Counsel? Your Honor, I... Go ahead. You have time left. I didn't mean to cut off your argument. Well, Your Honor, I think I want to get into this issue of whether or not, how this matter was handled in the court below. I know the court is saying that this was just a hearing on the merits, but I don't know that... Well, that's how Judge Bailey handled it, and this isn't really... You didn't file a complaint and a motion to dismiss saying you didn't state a cause of action, which is normally what 2615 is about, is it? Yes, Your Honor. Okay. But when you title a document a motion to dismiss, when the court takes it up and says it's your motion, you go forward. If this was a hearing on the merits, my understanding would be if you file an objection, you proceed and you have the burden to proceed and prove your case. Instead, the trial court treated it like it was a motion to dismiss. Well, Judge Bailey, though, seemed to pick up the dropped ball to give everyone an opportunity to present anything they wanted in support of their respective positions. Did he not? I'm not sure I know what the court's referring to. Well, the court conducted a hearing on the objections to determine their validity, and essentially, despite whatever order it was that he had people proceed, you were given an opportunity to present anything you wanted to present, didn't you? Yes, Your Honor. And the people who were representing the estate had an opportunity to present whatever they wanted to present, too? Yes, Your Honor. And then the court said, eh, there's no basis to the objection. I'm going to deny it. Now, what part of the hearing was, notwithstanding the unfortunate title used, what part of the hearing deprived you of whatever it is you wanted to present in support of your position? Well, I think, though, because of the way it's titled and the nature of how it wound its way before the trial court. Okay, let me put it this way. Had they said, answer in denial, saying, yeah, we understand they're making an objection. It's bogus. There's no merit to it. Let's have a hearing and have the court deny it. How would you have handled your position any differently, or what evidence or other matter would you have presented to the court that you did not? I think the court could have heard more factual evidence with regard to misrepresentation. What would you have presented? Did you make an offer of proof? Did you indicate to the court, I got more stuff, and we're not having a chance to present it? No, Your Honor. Are you asking us to reverse on the basis that, gee, if it went back and it was just an answer in a denial, we would have put on more stuff? I think we're asking this court to reverse on the basis that insufficient deference was granted to the presbytery's action, and that the trial court should hold further proceedings consistent with that opinion. What would those be? An evidentiary inquiry into what evidence can we find with regard to Ms. Reynolds' intent. And no one was given the opportunity to do that at the trial level? I'm not sure that at the trial level, because of the nature of the documents going back and forth, the focus wasn't put on to what Ms. Reynolds' intent was. The focus was on, and pretty much almost exclusively narrowed to... How about after Judge Bailey made his ruling, and as I see it, really did a nice job explaining what his thinking was, and making it clear that the court had made this ruling on the court's assessment of what the merits were, as if it was a denial, an answer in denial, as opposed to a motion to object. As opposed to taking an appeal and saying, gee, we want a new hearing because the court was mistaken. Wouldn't the appropriate step have been petition for reconsideration or a rehearing, saying, you know, Judge, we were confused. Apparently, we thought this was a motion to dismiss, and you conducted this full hearing on the merits and made this ruling, and we have this other evidence that we would like to present, but that didn't happen, did it? No, it did not. Instead, you're here saying, we should reverse the court based on this argument that it never heard. Well, I'm not sure that the court never heard the argument. Well, you didn't raise it, so I guess the court never heard it. As far as the motion to dismiss, no, but as far as the... All the other evidence you'd want to present? As far as the deference to be given to that presbyterian's decision, I think the court never had that argument before. No, but about... You're talking to us now about other evidence that you would want to present, and you just said the court should go back and conduct this hearing. I'm wondering what part of that hearing did you ask the trial court to conduct? It seems to me there wasn't any. Candidly, no, there was not. Okay. But you just asked us to reverse the trial court to go back and conduct a new hearing. Because... Go ahead, finish. Because there was no... Even if we're not talking about a motion to dismiss, we're talking about a hearing on the merits. If he didn't grant sufficient deference to the presbyterian's decision to dissolve, his decision was that... Essentially granted no deference, and was that faith is the same as first. What we're saying is once first is dissolved by action of presbytery, it has to go back for him to determine then what happens. Because he didn't really enter an order that was directed at saying, well, under the anti-lapse statute or the ordinance I pray doctrine, that this is why the question should still go to faith. Okay. Thank you, counsel.  Thank you. Chief Burr, Mr. Gorman. Mr. Gorman, you'll be going first, sir? Yes, Your Honor. Okay. And how much time did you want? Fifteen minutes. Okay. Thank you. You may proceed. May it please the court, Brett Gorman... Counsel. ...faith presbyterian. The sole basis, the sole issue before this case, this court, is whether this particular gift lapsed. Did it lapse or did it not? And the sole evidence that was presented by the objectors was evidence of a resolution by the presbytery in which it purportedly dissolved the Illinois Religious Corporation known as First Presbyterian Church of Quincy, Illinois. What the record also shows, though, is viewed in context that dissolution was not a dissolution out of existence. And in fact, the dissolution itself was made in the context of a settlement agreement that specifically provided First Presbyterian Church of Quincy, Illinois and Illinois Religious Corporation would survive and change its name in the future. That's what happened. There's no indication that the Illinois Religious Corporation ceased to exist. Now, even beyond that, as we've presented in our brief and in particular the appendix, we've cataloged the documents that we relied upon before Judge Bailey to make out this case that First Presbyterian Church of Quincy, Illinois actually did exist at the time of the decedent's death. It was just a matter of a corporate name change. And in addition to the settlement agreement itself, which specifically references First Presbyterian Church and Illinois Religious Corporation, we also have a quitclaim deed in which the presbytery gave up any right to the church property in favor of First Presbyterian Church of Quincy and Illinois Religious Corporation, and also a bill of sale for any property that was on the church premises. And our position has been all along, if there was an effort or an intent to dissolve the church out of existence, the presbytery would have no business quitclaiming anything to a defunct corporation. But even beyond that, the parties, the presbytery and the religious corporation, just so there would be no confusion in the future, an issue like this entered into a separate agreement, this agreement regarding gifts and bequests. And they specifically agreed that for wills that had been made prior to this change in that faith Presbyterian would be entitled to receive those gifts. Even beyond the name change, I guess what the agreement actually provides is that until there is a new First Presbyterian Church associated with the presbytery in Quincy, Illinois, faith Presbyterian will continue to receive even those gifts that are made out to First Presbyterian. So there is absolutely no question in terms of the intent of the presbytery in what they did in dissolving, purportedly dissolving, the church at this November 13, 2007 meeting. To top all of that off, the presbytery came in to these proceedings. Doesn't this, about the claims presented and the things you're now arguing to us, require a hearing for a trial court determination? They certainly do, and there was a hearing. Yeah, but you entitled the motion to object. Motion to dismiss objections, counsel, which says, you know, in normal 2-6-15 fashion, as if it were to apply, you haven't stated a cause of action. And we don't need a hearing. Isn't that what motions to dismiss normally say? Yes, Your Honor. But in fact, in this case, we needed a hearing, and the hearing was conducted, despite your pleading. That's correct. And I guess we could have called it a motion for a ruling on the objection. How about just an answer in denial? Well, we certainly could have, perhaps, titled it differently. We might not then have had the first part of the argument that you've heard in the brief talking about all the rest of the stuff that we had to address, counsel. It was perhaps an inartfully titled motion. But as that motion worked its way through the process, it became clear, and nobody ever disputed that this was going to be a hearing on the merits. Well, that's what I just attempted to resolve with Mr. Mamdani, right? Mamdani. Mamdani. Excuse me, sir. Whether that's what happened, whether the parties were in notice that this was going to be a hearing on the merits, and whether the objectors had a full opportunity to present any evidence they wished. It's your position that's what happened? We believe that they did, Your Honor. And there's really no question in that hearing. And I understand the argument. I understand the inartful titling of the motion. But to get this in front of the court and the way it actually worked its way through the process, there was no question in that hearing. And I take issue with this because I continue to see this, this point that I made some comment at the conclusion of the hearing, that this was all the evidence that we had to present for today. What did you mean by that? Well, I was responding to a question by the court in which the court asked me, and this is on page A157 of the objector's appendix. The court said, you have evidence you want to present today, or just take it on the documents and motions and arguments. And I answered the court's question. Your Honor, the only questions we had, at least today, that we intended to present were the documents that had been submitted. And the court then continues on the next page. Is there any challenge to the authenticity of the documents that are attached to the various pleadings? Mr. George Lewis answered no. Mr. Tom Leeper answered no, Your Honor. And I then said, we have no objection to that either. In a case where we're talking about authenticity of documents, clearly this is a hearing on the merits. And when you look at the requests for relief that the objectors had throughout these proceedings, their position was never along the lines of, you know, we need to take some discovery, we need to address certain points. It was always, we asked the court to rule in our favor and find that the gift lapsed. That was always their position. The other point is, the court asked counsel about whether this could have been raised in a motion to reconsider. And, in fact, there was a motion to reconsider that was filed by the objectors that we then briefed again and argued the second time. What did they raise in their motion? They basically just said the court is wrong. The court erred. They did not say. Was there any request to present any additional evidence or arguments? There was not. There was no indication that there was a question of fact. There was no indication that there needed to be some discovery that had to be undertaken. Well, you heard the earlier discussion I had with counsel in which I, essentially it was to address what I understood to be implicit in his argument that, gee, somehow we weren't sure and we were confused and we would have presented more evidence or arguments if we knew this was going to be a full hearing on the merits. Any of that presented in the petition for reconsideration? There was nothing like that in the motion to reconsider. It was basically a two-page motion that said it went through the court's paragraphs and said the court erred, the court was wrong, and that's really it. By the way, was this a hearing based upon documents and argument, or was there, in fact, any testimony actually presented? There was no testimony. It was a hearing based upon documents. And to that point, there's been some discussion about this issue of no evidence of the congregation and no evidence that it was the same. I just wanted to point out this issue. There is no survey that was undertaken to say that the composition of the congregation in 1996 was the same as the roles are in 2008 or 2009. But in the objector's own submissions, there is evidence that the congregation is the same, and it's on A27 of their appendix in a letter they submitted from the pastor in which he says, Dear members and friends of First Presbyterian Church, this is August 9, 2007. As you know, our congregation is the oldest congregation in the city of Quincy, Illinois, dating back 167 years, and actually 177 years, when, with what is now First Union United Congregational Church, our ancestors formed the first church in Quincy, meeting then in the Lord's Barn for 10 years before the congregation had grown large enough to separate into two congregations, one congregational and the other Presbyterian. That is the evidence of the congregation. It was the same. It has always been the same. This was not a situation in which the presbytery booted out the members of this church. This was a situation in which the congregation declared its independence from the presbytery and went on to enter into, later that fall, this settlement agreement that specifically contemplated that the Illinois Religious Corporation, known as First Presbyterian Church of Quincy, would survive with a name change. That's exactly what happened. That was the evidence that was presented. This point about Lowe and the idea that somehow the court is bound to defer to the action of the presbytery, that argument actually supports the church's position in this case, because if we're going to defer to the action of the presbytery, we find that First Presbyterian Church of Quincy survived. It survived after this dissolution. All there was, as Judge Bailey concluded, was a disaffiliation. I had asked about the reference that Judge Bailey made, I think, in the court's findings, the same denomination, same corporation, the same congregation with the same pastor. Mr. Mondani, correct? Disputed that and said there was no evidence of that effect. Was there any evidence to show it was, in fact, the same congregation with the normal attrition one might expect from year to year, supporting the finding that Judge Bailey made? There was no, as I said, there was no survey, there was no evidence of a comparison of the roles. There was nothing like that. There was the evidence, which was undisputed, as I indicated, that the membership of the church declared its independence from the presbytery, and that's what led them to this meeting in November of 2008. The congregation remained the same. It was not the presbytery reaching back and saying, we're throwing you out of our church. Let me be more clear. I'm not sure if my question was as clear as it should have been. Was there anything in this record showing, for instance, that there was a split in the congregation? As sometimes happens historically, a congregation has disputes about theological views, and half goes one way, half goes another way. Is there any evidence in this record that anything like that happened here? There certainly is, in that that's what led them to this whole chain of events. But as far as the numbers, my understanding was that this was a dispute between the congregation and its, what should I say, its administrative body, as opposed to within the congregation. Now, is that correct, based upon the evidence that was submitted? There was a split, and it was, as I said, there's no evidence that would say, here is the whole congregation, and here's one side, and here's the other side. There's no evidence of that. So, the inference I draw from these documents was that the problem that they had was with the Presbytery, as opposed to within the church. That's correct. Was there anything different about that? No. Okay. I'm sorry, you still have a few moments left. I would just say, in conclusion, that to undo what Ms. Reynolds requested in her will, to take away her charitable intent in giving this to the church, based upon this evidence, is obviously contrary to her testamentary intent, as explicitly stated in that document, in which she said she gives the residue of her estate to First Presbyterian Church in Quincy, Illinois. One last question. Is my understanding correct that the summit issue here is half a million dollars? Actually, that's the proposed interim distribution. I believe there may be some additional money on top of the $500,000, but that was the amount at issue. So, at least half a million? Yes, Your Honor. Thank you. Thank you, Counsel. Mr. Leeper? May it please the Court? Counsel? I'm Tom Leeper. I represent the Executrix, Kathy Ervin. It's an honor and a pleasure to be here. And as far as what Muriel Reynolds' intent was, we have a will. As obviously you know, the residue of that will, what we know about that, it was, number one, to a charity, and number two, that charity happened to be your church. It's located at 24th and Monroe Street in Quincy, Adams County, Illinois. How do we know what the will said? And you're asking about the will itself? Yes. Is it a part of the record in this case? I thought the record was supplemented to add the will itself. I may be mistaken on that. I remember at one point that I saw that the will wasn't in the record, and I thought that was supplemented. Certainly, I'm sorry if that is not formally in the record. But there is no doubt in the arguments of counsel and the evidence that was presented that the Residuary Clause simply has one entity, and it says, First Presbyterian Church of Quincy, Illinois. That was signed in 1996. At that time, the First Presbyterian Church was at 24th and Monroe in Quincy, and later there was a name change. She subsequently, there was a guardianship for her, and she was in a nursing home. So when the events that you were hearing about transpired, she actually wasn't competent to execute a new and different will. With respect to the substance here, it kind of struck me last night when I was reviewing all of the information. Normally, when someone is here arguing a case, and you have some argued ambiguity, you've got a document, and you've got one side over here that was on one side of the case. You've got one party over here that was on the other side, and they disagree with the interpretation. In this case, all of the documented evidence, there's two parties. It's the Presbytery, and it's originally the First Presbyterian Church, which changed its name to Faith Presbyterian Church. Those are the two entities that developed the documents, and there's no disagreement between those two. It's only a third party that was not a party, because they're arguing that somehow this gift lapsed. With respect to the documents themselves, as Justice Pope asked about a little while ago, this agreement, I would think the agreement regarding gifts, devices, and bequests would settle the issue. In addition to that, if that doesn't settle the issue, we've got the Affidavit of Name Change, and the Court has been inquiring about the parties who still attends church. I think it's at least interesting that the Affidavit of Name Change is signed by Mr. Ayers, pursuant to his title, and right in that it says it's the Faith Christian Church, also known as First... Excuse me. I'm from a Christian church. I keep saying Christian. It was from the Faith Presbyterian Church, also known as, or maybe it's formally known as First Presbyterian Church. And Mr. Ayers is a party to that. And at that point in time, that is the process of changing the name from First Presbyterian Church to Faith Presbyterian Church. Equally importantly, as far as the evidence goes, after this case was already begun, there was an acknowledgement. That's on page 16 of the Church's brief. The acknowledgement is filed and signed by the presbytery, and they acknowledge, in that acknowledgement, that the current Faith Presbyterian Church is the proper recipient of this particular lawsuit. So the two parties that were there initially developing these documents agree with the proper disposition here in this Court. And that's that Faith Presbyterian Church should be the recipient of the residue of this estate. In conclusion, the Court has been asking about why shouldn't this go back for another hearing? And I'd like to briefly look at the settlement agreement that's been discussed back in 2007, paragraph 1. It says the purpose of the agreement is to avoid the expense, delay, inconvenience, burden, and uncertainty that would result if this agreement was not entered into or if litigation ensued. There was never... Thank you, Your Honor. In conclusion, we just ask that Judge Bailey's order be affirmed. Thank you, Counsel. Mr. Mondani. Yes, Your Honor. I would first like to address Faith's position that they've repeated a couple times, that they declared their independence from the Great Rivers Presbytery. In fact, I think what the record reflects, the letter that was sent reflects that they requested to be dismissed with their property. They didn't want to lose their property. That actually ties in with Mr. Lieber's latest point about the purpose of the settlement agreement was to avoid litigation. That litigation was as to the disposition of the church's property, the building, accounts, et cetera, and to suggest that there's some sort of declaration of independence. No, they were asking to be sent along and left intact to another denomination. Instead, the presbytery decided to dissolve them. As far as the court's inquiry with regard to whether or not there were any members or any evidence in the record reflecting that there's any members that did not want to move, on page A33 of the appendix, this is the resolution minutes of the presbytery meeting, paragraph 2B states that there be an orderly transfer of members from the First Presbyterian Church of Quincy to the Evangelical Presbyterian Church, and that members of First Presbyterian Church of Quincy who wish to remain affiliated with the Presbytery Church USA will have their membership retained. There really wouldn't be much purpose to putting that provision in if there weren't at least some members that were wishing to remain within the Presbyterian Church USA denomination. Do you know how big this congregation is? Off the top of my head, I actually do not, Your Honor. Just to hit another point that Faith has raised, they've mentioned that the settlement agreement provides for the continued corporate existence. Nowhere in the settlement documents that I'm aware does it say specifically, First Presbyterian Church and Illinois Religious Corporation shall continue to exist and be renamed. There's a suggestion that the agreement was entered by an entity called First Presbyterian Church, Quincy, Illinois, Illinois Religious Corporation, and it provides that the name should be changed, but there's nothing that says that specifically the corporate entity shall continue to exist. Mr. Gorman made reference to your petition for reconsideration. Is it correct that in it you didn't ask for any of the relief you're now asking from this court, namely to send it back for a further hearing because perhaps there was some confusion as to what the nature of the hearing was? That's correct, Your Honor. Well, then why should we grant that relief now when you didn't ask the trial court for it? Well, I would say because, Your Honor, that the issue of deference to be granted to religious bodies' decisions, it's an important point. Was it less important when you filed the petition for reconsideration? No, Your Honor. But I think that below the argument was that this decision, that faith and first are the same thing and that presbytery's actions in dissolution were meaningless, that was exactly what the argument was about in both the issue of the hearing as well as… The reason I confront that directly, Counsel, it's always a very troubling business for this court to reverse a trial court based on an argument it never heard. And the reason I asked you what I just did is I want to make sure that my understanding is correct, that essentially this is an argument it never heard. With respect to the titling of the motion? Well, not only that, but gee, we need to put on more evidence and there's uncertainty and all the rest of it. Our position below is that there isn't any other evidence than what's there. And the decision to dissolve the church is controlling. Once that church is dissolved, the gift should lapse and then pass to the next case. Well, then if there's no additional evidence other than what's already before us, why shouldn't we just look at that and make a decision now? What's the point of reversing and remanding? The only point would be to allow both sides to present a full picture to the court with regard to what Miss Reynolds and what evidence might exist of Miss Reynolds' intent. So that kind of my initial inquiry, if only she had known, her beneficence would have been directed towards your clients as opposed to this faux-Presbyterian church. Well, I think what it is is give everyone a chance to actually address this issue head-on with the court and present whatever evidence. They may have compelling evidence that she intended this to go to that particular church or to that mission, et cetera, what have you. Without any further inquiry by the trial court, unfortunately the record doesn't contain very much regarding what her intent was. The only point I would make, just in closing, is that regardless of whether the motion to dismiss argument goes anywhere, the court's decision with regard to dissolution of faith is still entitled to deference. And if the court were to allow the trial court's decision to stand, that stands as permitting what I believe, at least under the law, would be an impermissible, I guess, obliteration of that motion of deference. Okay, counsel. We'll take this matter under advisement and be in recess for a few minutes.